1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JORGE ANDRADE RICO,                      No.  2:17-cv-1402 KJM DB P

12              Plaintiff,

13        v.                                  FINDINGS AND RECOMMENDATIONS

14   JEFFREY BEARD, et al.,

15              Defendants.

16

17        Plaintiff is a state prisoner proceeding through counsel with a civil rights action pursuant

18   to 42 U.S.C. § 1983.  Plaintiff alleges use of the Guard One security check system in the Security

19   Housing Unit ("SHU") at Pelican Bay State Prison ("PBSP") violated his Eighth Amendment

20   rights.  Before the court is defendants' motion to dismiss.  For the reasons set forth below, the

21   court recommends defendants' motion be granted in part and denied in part.

22                                  **BACKGROUND**

23   **I.        Allegations of the Second Amended Complaint**

24        Plaintiff is an inmate at PBSP.  He was incarcerated in the Administrative Housing Unit

25   ("ASU") at PBSP from May 20, 2014 until October 2014 and then in the SHU from October 2014

26   until August 24, 2016.  (ECF No. 38, ¶ 7.)

27        Plaintiff states that PBSP instituted the Guard One security system in the SHU on August

28   3, 2015.  (Id. ¶ 28.)   The Guard One system was authorized by defendants Beard, Kernan,

                                           1

Stainer, Harrington, Allison, and Ducart.  (Id. ¶¶ 8-13.)  The Guard One system was designed to reduce inmate suicides by confirming that officers have checked inmates to make sure they are alive and "free from obvious injury."  (Id. ¶¶ 3, 26.)  The system requires officers to strike a metal button on each cell in the SHU with a metal rod.  (Id. ¶ 2.)  To do so, officers must open and close the metal doors to each pod of cells in the SHU.  (Id. ¶ 22.)  Opening and closing the doors makes a loud noise.  (Id. ¶ 23.)  Officers at PBSP conducted these checks at night every half hour until December 2015 when officers were required to check once an hour.  (Id. ¶ 31.)  They continued the checks every half hour during the day.  (Id. ¶ 36.)

Plaintiff alleges that the noise caused by use of the Guard One system caused him severe sleep deprivation.  He further alleges that defendants Nelson, Garcia, Escamilla, and Shaver (the "floor officer defendants") "made extra noise by conducting the Guard One checks haphazardly." (Id. ¶ 35.)  Plaintiff contends defendants Ducart, Abernathy, Marulli, Cuske, and Parry (the "appeals review defendants") failed to act to reduce the noise from the Guard One checks in response to plaintiff's grievances.  (Id. ¶¶ 46-52.)

Plaintiff seeks declaratory relief; injunctions requiring, among other things, PBSP to change its security check system and relocate its SHU; compensatory damages; punitive damages; and costs of this suit.  (Id. ¶ 57.)

## II.     Procedural History

Plaintiff initiated this action by filing a complaint in the Northern District of California on August 2, 2016.  (ECF No. 1.)  That court appointed counsel for plaintiff in January 2017.  (ECF No. 31.)  The case is proceeding on plaintiff's second amended complaint ("SAC") filed May 3, 2017.  (ECF No. 38.)

On July 6, 2017, Judge Breyer ordered the case transferred to the Eastern District of California because the Guard One system at issue had been implemented pursuant to an order

////

////

////

////

issued by Judge Mueller in <u>Coleman v. Brown</u>, No. 2:90-cv-520 KJM DB (E.D. Cal.).[1]  (<u>See</u> ECF No. 51.)

On July 11, 2017, plaintiff filed a notice of related cases.  (ECF No. 59.)  Plaintiff contended that the present case and others regarding the Guard One system are related to <u>Coleman</u>.  On February 2, 2018, Judge Mueller issued an order relating the present case and two others to <u>Coleman</u>.  (ECF No. 60.)  Each case was transferred to this district and reassigned to Judge Mueller and to the undersigned magistrate judge.

On February 28, 2018, defendants filed the present motion to dismiss.  (ECF No. 68.)  Plaintiff filed an opposition (ECF Nos. 73, 74) and defendants filed a reply (ECF No. 76.)  On May 17, 2018, defendants filed a supplement to their motion in which they argued that because plaintiff was no longer incarcerated in the SHU, his claims for injunctive and declaratory relief should be dismissed as moot.  (ECF No. 77.)

On May 18, 2018, the undersigned heard argument on defendants' motion to dismiss.  (ECF No. 78.)  On May 21, the undersigned ordered the parties to submit supplemental briefs on the mootness issue raised by defendants in their May 17 supplement.  (ECF No. 81.)  The parties have filed those briefs and defendants' motion to dismiss is ready for decision.  (<u>See</u> ECF Nos. 83, 84, 85.)

**MOTION TO DISMISS**

Defendants argue: (1) they are protected by the doctrine of qualified immunity; (2) injunctive relief is inappropriate; (3) plaintiff fails to state claims against the appeals review defendants; and (4) plaintiff fails to state an Eighth Amendment claim against the floor officer defendants.  Finally, in their supplemental briefing, defendants argue that because plaintiff is no longer incarcerated in the SHU at PBSP, his claims for injunctive and declaratory relief are moot.

////

---

[1] Defendants ask the court to take judicial notice of documents and orders from the <u>Coleman</u> case.  (<u>See</u> ECF No. 68-1.)  The court may take judicial notice of "matters of public record" pursuant to Federal Rule of Evidence 201 without converting a motion to dismiss into a motion for summary judgment.  <u>MGIC Indem. Corp. v. Weisman</u>, 803 F.2d 500, 504 (9th Cir. 1986).  Accordingly, defendants' request is granted.

I. **Legal Standards**

A. **Standard of Review on Motion to Dismiss**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for motions to dismiss for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> The court must accept as true the allegations of the complaint, <u>Hospital Bldg. Co. v. Rex Hospital Trustees</u>, 425 U.S. 738, 740 (1976), and construe the pleading in the light most favorable to plaintiff, <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421 (1969).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984) (citing <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)). In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may 'generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.'" <u>Outdoor Media Grp., Inc. v. City of Beaumont</u>, 506 F.3d 895, 899 (9th Cir. 2007) (citing <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 763 (9th Cir. 2007)).

B. **Eighth Amendment Deliberate Indifference**

Under the Eighth Amendment, "prison officials are . . . prohibited from being deliberately indifferent to policies and practices that expose inmates to a substantial risk of serious harm." <u>Parsons v. Ryan</u>, 754 F.3d 657, 677 (9th Cir. 2014); <u>see also</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 847 (1994) (prison official violates Eighth Amendment if he or she knows of a substantial risk of serious harm to an inmate and fails to take reasonable measures to avoid the harm). Deliberate indifference occurs when "[an] official acted or failed to act despite his knowledge of a substantial risk of serious harm." <u>Farmer</u>, 511 U.S. at 841. Thus, a prisoner may state "a cause of action under the Eighth Amendment by alleging that [prison officials] have, with deliberate

4

indifference, exposed him to [conditions] that pose an unreasonable risk of serious damage to his future health." Helling v. McKinney, 509 U.S. 25, 35 (1993).

"The second step, showing 'deliberate indifference,' involves a two-part inquiry." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). "First, the inmate must show that the prison officials were aware of a 'substantial risk of serious harm' to an inmate's health or safety." Id. (quoting Farmer, 511 U.S. at 837). "This part of [the] inquiry may be satisfied if the inmate shows that the risk posed by the deprivation is obvious." Thomas, 611 F.3d at 1150 (citation omitted). "Second, the inmate must show that the prison officials had no 'reasonable' justification for the deprivation, in spite of that risk." Id. (citing Farmer, 511 U.S. at 844) ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably.")

**C. Qualified Immunity**

Government officials enjoy qualified immunity from civil damages unless their conduct violates clearly established statutory or constitutional rights. Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a court is presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001), receded from, Pearson v. Callahan, 555 U.S. 223 (2009) (the two factors set out in Saucier need not be considered in sequence). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011). The existence of triable issues of fact as to whether prison officials were deliberately indifferent does not necessarily preclude qualified immunity. Estate of Ford v. Ramirez–Palmer, 301 F.3d 1043, 1053 (9th Cir. 2002).

"For the second step in the qualified immunity analysis—whether the constitutional right was clearly established at the time of the conduct—the critical question is whether the contours of the right were 'sufficiently clear' that every 'reasonable official would have understood that what

he is doing violates that right.'" Mattos v. Agarano, 661 F.3d 433, 442 (9th Cir. 2011) (quoting al—Kidd, 563 U.S. at 741) (some internal marks omitted). "The plaintiff bears the burden to show that the contours of the right were clearly established." Clairmont v. Sound Mental Health, 632 F.3d 1091, 1109 (9th Cir. 2011). "[W]hether the law was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition." Estate of Ford, 301 F.3d at 1050 (citation and internal marks omitted).

In making this determination, courts consider the state of the law at the time of the alleged violation and the information possessed by the official to determine whether a reasonable official in a particular factual situation should have been on notice that his or her conduct was illegal. Inouye v. Kemna, 504 F.3d 705, 712 (9th Cir. 2007); see also Hope v. Pelzer, 536 U.S. 730, 741 (2002) (the "salient question" to the qualified immunity analysis is whether the state of the law at the time gave "fair warning" to the officials that their conduct was unconstitutional). "[W]here there is no case directly on point, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" C.B. v. City of Sonora, 769 F.3d 1005, 1026 (9th Cir. 2014) (citing al—Kidd, 563 U.S. at 740). An official's subjective beliefs are irrelevant. Inouye, 504 F.3d at 712.

**D. Mootness**

The case or controversy requirement of Article III of the federal Constitution deprives the court of jurisdiction to hear moot cases. Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70 (1983); NAACP v. City of Richmond, 743 F.2d 1346, 1352 (9th Cir. 1984). A case becomes moot if the "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Murphy v. Hunt, 455 U.S. 478, 481 (1982) (citations omitted). The federal courts are "without power to decide questions that cannot affect the rights of the litigants before them." North Carolina v. Rice, 404 U.S. 244, 246 (1971) (per curiam) (citation omitted).

In the context of a prisoner's request for injunctive relief, a prisoner's transfer away from the institution at which the challenged conduct is occurring will generally moot any claims for injunctive relief relating to the prison's policies, unless the suit is certified as a class action. Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir. 1995) (when an inmate seeks injunctive or

declaratory relief concerning the prison where he is incarcerated, his claim for such relief becomes moot when he is no longer subjected to those conditions); see also Nelson v. Heiss, 271 F.3d 891, 897 (9th Cir. 2001); Johnson Moore, 948 F.2d 517, 519 (9th Cir. 1991).

The claim is not moot, however, if there is a likelihood of recurrence. Demery v. Arpaio, 378 F.3d 1020, 1026 (9th Cir. 2004). The capable-of-repetition-yet-evading-review exception to the mootness doctrine applies when (1) the duration of the challenged action is too short to be litigated prior to cessation, and (2) there is a reasonable expectation that the same party will be subjected to the same offending conduct. United States v. Sanchez-Gomez, 138 S. Ct. 1532, 1540 (2018). Courts also recognize an exception to the mootness doctrine where a defendant voluntarily ceases the illegal conduct but could resume it again. See O'Connor v. Washburn Univ., 416 F.3d 1216, 1221-22 (10th Cir. 2005).

**II.     Analysis**

Defendants argue: (1) they are protected from a suit challenging the use of Guard One by the doctrine of qualified immunity; (2) injunctive relief is inappropriate because it would conflict with the directive in Coleman that the prisons implement Guard One and because it is moot; (3) plaintiff fails to state claims against the appeals review defendants; (4) plaintiff alleges at most negligence, not deliberate indifference under the Eighth Amendment, against the floor officer defendants. Below, the court first addresses defendants' mootness argument. Because the court finds plaintiff's claims for injunctive and declaratory relief moot, it does not address defendants' remaining grounds for dismissing those claims. The court then considers defendants' arguments regarding qualified immunity, failure to state a claim against the appeals review defendants, and failure to state an Eighth Amendment claim against the floor officer defendants.

**A.  Are Plaintiff's Claims for Injunctive and Declaratory Relief Moot?**

Defendants argue that because plaintiff is no longer incarcerated in the SHU, his claims for injunctive and declaratory relief are moot. On that basis, plaintiff's claims against defendants in their official capacities should be dismissed. Plaintiff does not dispute that he is not currently subject to the Guard One checks and any injunctive relief would not, at this time, have a direct effect on him. Plaintiff counters that he meets two exceptions to application of the mootness

doctrine: (1) his claims are capable of repetition yet evade review; and (2) defendants voluntarily ceased exposing him to the Guard One checks.  This court addresses each exception below.

**1.  Exception for a Controversy Capable of Repetition, yet Evading Review**

A dispute qualifies for this exception to the mootness doctrine "only 'if (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again.'"  Sanchez-Gomez, 138 S. Ct. at 1540 (quoting Turner v. Rogers, 564 U.S. 431, 439–40 (2011) (alterations and internal quotation marks omitted)).  Plaintiff bears the burden of demonstrating that both prongs of this exception apply.  Incumaa v. Ozmint, 507 F.3d 281, 289 (4th Cir. 2007).  Because the court finds plaintiff has not met his burden to establish the second prong of this test, it does not reach the first.

Plaintiff argues that he can reasonably expect to be subjected to Guard One checks again. While Guard One checks are used in the SHU, and their use in the SHU is the subject of plaintiff's complaint, they are also used in the ASU.  Plaintiff contends that "'administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration.'"  (ECF No. 84 at 12 (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983).)  The Supreme Court has noted that restrictive units such as administrative segregation are used to, among other things, protect prisoners' safety, break up potentially disruptive groups of inmates, and place inmates awaiting classification or transfer.  Hewitt, 459 U.S. at 468, receded from on other grounds, Sandin v. Conner, 505 U.S. 472, 482-84 (1995).

Plaintiff does not distinguish between placement in the SHU and placement in the ASU. He simply argues that future placement in restrictive housing is likely.  Defendants argue that plaintiff's complaint is limited to a challenge to his SHU placement from August 2015 to August 2016.  Therefore, defendants continue, plaintiff may not rely on the likelihood that he may end up in the ASU as a basis for establishing an exception to the mootness doctrine.

////

////

////

8

The ASU and the SHU are physically separate parts of the prison[2] and are governed by separate sets of regulations.  Placement in the SHU is required where an inmate's "conduct endangers the safety of others or the security of the institution" or where the inmate has been "found guilty for serious misconduct."  Cal. Code Regs., tit. 15, § 3341.3.  Inmates are placed in the ASU for a variety of reasons including where they present or are subjected to an immediate threat to safety, where they are subject to an investigation, where they are related to a prison staff member, where they have been the victim of a sex crime, and for medical or psychiatric reasons.  Cal. Code Regs. tit. 15, §§ 3335, 3335.5.

This court agrees with defendants that plaintiff's complaint is limited to his challenge to the use of Guard One in the SHU at PBSP.  Plaintiff's complaint of sleep deprivation relies on the pod configuration in the SHU (ECF No. 38, ¶ 22), the type of doors used in the SHU (id. ¶ 23), and other facts of confinement in the SHU (id. ¶ 32).  Plaintiff's grievances all addressed the sleep deprivation he suffered in the SHU.  (Id. ¶¶ 46-51.)   It appears that since August 2015 when the Guard One system was implemented at PBSP, plaintiff was incarcerated in the ASU for some period of time.  (See ECF No. 83-2 at 50.)  Plaintiff has not attempted to amend his complaint to allege that he suffered sleep deprivation during his incarceration in the ASU.

The "capable of repetition" exception to mootness requires that plaintiff establish the likelihood that he will be subjected to the "same" allegedly unconstitutional conditions he was subjected to previously.  Sanchez-Gomez, 138 S. Ct. at 1540.  Courts have held that the possibility of a similar issue arising in the future does not render a controversy capable of repetition where the issue before the court is fact-specific.

For example, in O'Connor, the Tenth Circuit considered a First Amendment challenge to a statue placed temporarily on a public college campus.  Plaintiffs argued that the statue was an "unconstitutional endorsement of an anti-Catholic message."  416 F.3d at 1219.  Because the statue was removed by the time the case reached the Court of Appeals, the court found the

---

[2] In Coleman, the court discusses the differences between the ASU and SHU at PBSP.  28 F. Supp. 3d at 1104-05.  There appears to be no dispute by the parties that PBSP's ASU and SHU are physically separate.

plaintiffs' request for prospective relief moot. While the court recognized that the university could bring another religiously-themed statue onto campus in the future, the court refused to resolve the constitutionality of that hypothetical future statue because "Establishment Clause questions are heavily dependent on the specific context and content of the display." Id. at 1222.

Similarly, the question in this case is heavily fact-specific. Determining whether use of the Guard One system in the SHU violated plaintiff's Eighth Amendment rights requires consideration of a combination of factors affecting SHU incarceration, as demonstrated by the allegations of plaintiff's complaint. The fact that there is some possibility plaintiff could be incarcerated in the ASU in the future is factually distinct. Plaintiff does not allege that incarceration in the ASU is identical in relevant respects to incarceration in the SHU. There is no basis for this court to find that if plaintiff ends up in the ASU at some point during his incarceration, he would be subjected to the same conditions complained of here.

When limited to the SHU, plaintiff's contention that his injunctive and declaratory relief claims are not moot fails. The Supreme Court just recently re-affirmed the rule that the case-or-controversy requirement is not satisfied by the "possibility that a party 'will be prosecuted for violating valid criminal laws.'" Sanchez-Gomez, 138 S. Ct. at 1541 (quoting O'Shea v. Littleton, 414 U.S. 488, 497 (1974)). The Court has consistently refused to find an exception to the mootness doctrine where the continuing consequences of the order a party sought were "'contingent upon [the claimant] violating the law, getting caught, and being convicted.'" Id. (quoting Spencer v. Kemna, 523 U.S. 1, 15 (1998); citing Honig v. Doe, 484 U.S. 305, 320 (1988) and Lane v. Williams, 455 U.S. 624, 632-33 n. 13 (1982)).

Here, as in Sanchez-Gomez, plaintiff can, and is required by law to, refrain from further misconduct. This rule has been applied to placement in a prison's security housing unit based on a prisoner's misconduct. See Incumaa, 507 F.3d at 289 (placement in the maximum-security unit was based "exclusively on an inmate's conduct with incarcerated;" plaintiff Incumaa "holds the keys" to remaining free of that unit). Prison regulations establish that placement in the PBSP SHU is based on misconduct. Cal. Code Regs., tit. 15, § 3341.3. On this basis, plaintiff fails to satisfy the second prong of the "capable of repetition" exception.

Even if the rule of <u>Sanchez-Gomez</u> does not apply to this case, this court finds plaintiff would still fail to meet the capable of repetition exception to mootness. A "speculative possibility [that an event may reoccur] does not constitute a 'reasonable expectation'" for purposes of avoiding mootness. <u>West Coast Seafood Processors Ass'n v. Nat. Res. Def. Council, Inc.</u>, 643 F.3d 701, 705 (9th Cir. 2011). The possibility that plaintiff may again be housed in the SHU is simply speculation. There is no reasonable likelihood it will occur. In another case challenging use of the Guard One system at the SHU at PBSP, the court held that the possibility that a prisoner will be again housed in the PBSP SHU is "too speculative rise to the level of a reasonable expectation." <u>Suarez v. Beard</u>, No. 15-cv-5756-HSG, 2017 WL 2652199, at *5 (N.D. Cal. June 20, 2017).[3] This court agrees.

Plaintiff has not satisfied his burden of demonstrating a reasonable expectation he will be subjected to the use of Guard One in the PBSP SHU again. The capable-of-repetition-yet-evading-review exception does not save plaintiff's claims for injunctive and declaratory relief from dismissal as moot.

### 2. Exception Where Defendants Voluntarily Ceased their Illegal Activity

This second exception was established by the Supreme Court to avoid situations in which a defendant voluntarily ceased the illegal activity and failed to show there was no possibility the activity would resume. <u>Incumaa</u>, 507 F.3d at 288 (citing <u>United States v. W.T. Grant Co.</u>, 345 U.S. 629, 632 (1953) (quotation marks omitted)); <u>see also</u> <u>Ciarpaglini v. Norwood</u>, 817 F.3d 541, 544-45 (7th Cir. 2016) ("Courts are understandably skeptical when a defendant seeks dismissal of an injunctive claim as moot on the ground that it has changed its practice while reserving the right to go back to its old ways after the lawsuit is dismissed.") Where defendants have unilaterally ceased the conduct at issue, they bear the "'heavy burden of persuading the court' that 'it [is] absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" <u>EEOC v. Fed. Exp. Corp.</u>, 558 F.3d 842, 848 (9th Cir. 2009) (citing <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.</u>, 528 U.S. 167, 189 (2000)). "The voluntary cessation doctrine ensures

---

[3] <u>Suarez</u> has been transferred to this court due to its relationship to the present case and to <u>Coleman</u>. It is now case no. 2:18-cv-0340 KJM DB.

'that a defendant is not free to return to his old ways after it takes unilateral action that moots a case.'" Ctr. for Biological Diversity v. Tidwell, 239 F. Supp. 3d 213, 222 (D. D.C. 2017) (citing PETA v. U.S. Fish & Wildlife Serv., 59 F. Supp. 3d 91, 96 (D. D.C. 2014) and Larsen v. U.S. Navy, 525 F.3d 1, 4 (D.C. Cir. 2008)).

This exception is simply not applicable to the present situation. First, defendants have not "ceased" use of the Guard One system. Rather, plaintiff served his terms in the SHU and was then moved back into the general population. Guard One continues to be used in the SHU at PBSP. Accord Suarez, 2017 WL 2652199, at *3 (court finds voluntary cessation doctrine inapplicable because there has been no voluntary cessation of the Guard One security/welfare checks at PBSP SHU). Second, defendants did not "unilaterally" remove plaintiff from the SHU and from exposure to the Guard One system. Rather, plaintiff's SHU term expired. Plaintiff will only be subjected to Guard One in the SHU again if he chooses to commit an offense that sends him back there. This is not the situation envisioned by the Supreme Court when it adopted the "voluntary cessation" exception to the mootness doctrine. Courts have held that the exception does not apply when the challenged activity ceases for reasons besides a unilateral, voluntary cessation by the defendant. See Am. Civil Liberties Union of Mass. v. U.S. Conf. of Cath. Bishops, 705 F.3d 44, 55 (1st Cir. 2013) (citations omitted).

For example, in O'Connor, discussed above, the Court of Appeal also considered the voluntary cessation doctrine. It noted that this was "not a case, however, where the university has unilaterally changed its procedures in an effort to evade judicial review. Rather, as both parties have agreed, [the statue] was removed from campus at the prearranged termination date of the annual sculpture exhibition." 416 F.3d at 1221-22. The court concluded that the defendant "cannot be said to have voluntarily ceased allegedly illegal conduct where, as here, the controversy has become moot through the normal course of events rather than through the unilateral action of the defendant." Id. at 1222 (citing DeFunis v. Odegaard, 416 U.S. 312, 317-18 (1974)); see also DeFunis, 416 U.S. at 317-18 (voluntary cessation exception inapplicable to challenge to law school admissions policy where law school admitted plaintiff based on trial court decision and by the time case reached the Supreme Court, the plaintiff was in his final quarter of

his final year at the school); Am. Civil Liberties Union of Mass., 705 F.3d at 55 (controversy ended when a contract "expired according to its terms;" because defendants did "nothing to hasten its expiration," voluntary cessation exception inapplicable).

Plaintiff cites cases for the proposition that defendants need not have ceased the activity in response to litigation for the voluntary cessation exception to apply. (See ECF No. 84 at 15-16.) However, this court does not need to make that determination. The doctrine applies only where defendants have unilaterally made a change to stop the conduct and have the ability to unilaterally decide to resume it. That is not the case here.

In the present case, plaintiff was relieved of his incarceration in the SHU because the term of incarceration there based on his misconduct ended. Plaintiff's "minimum eligible release date" or MERD from his first SHU stay in 2015/2016 was August 20, 2016. He was released back into general population on August 23, 2016. Plaintiff's MERD for his 2017/2018 SHU stay was April 8, 2018. He was released on April 9, 2018. (See Decl. of W. Reynolds (ECF No. 83-1) ¶ 2.) The court recognizes that defendants had some discretion about when to release plaintiff after his MERD expired and before the maximum term. Even given that discretion, however, defendants' actions were not "unilateral" and plaintiff's return to the SHU depends upon his actions, not on defendants'.

The court in Incumaa considered a situation very similar to the one presented here. In that case, the plaintiff was incarcerated in a prison's Maximum Security Unit ("MSU") after he took prison employees hostage and assaulted them. Plaintiff filed suit challenging the MSU's policy banning his receipt of publications. 507 F.3d at 282-83. Like placement in the SHU in the present case, placement in the MSU was based on the prisoner's misconduct. Id. at 283. During the pendency of Incumaa's suit, he was moved out of the MSU. The defendants then moved to dismiss the case as moot. The court rejected plaintiff Incumaa's argument that the voluntary cessation exception applied. Id. at 288. The court found the plaintiff was moved out of the MSU due to ceasing his bad behavior and, more importantly, would only be returned to the MSU if he violated prison rules.

////

13

Like the plaintiff in <u>Incumaa</u>, plaintiff here will only be returned to the SHU if he commits misconduct, he will not be returned based on a unilateral action on the part of defendants. The voluntary cessation doctrine does not relieve plaintiff's claims for injunctive and declaratory relief from dismissal as moot.

If plaintiff's claims for injunctive and declaratory relief are moot, then plaintiff's official capacity claims against defendants should be dismissed. <u>See</u> <u>Atascadero State Hosp. v. Scanlon</u>, 473 U.S. 234, 237–38 (1985) (Eleventh Amendment bars suits for damages against a state); <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989) (suit against a state official in his or her official capacity is no different from a suit against the state itself). Plaintiff does not dispute that conclusion. (<u>See</u> ECF No. 84 at 8.) Therefore, only plaintiff's claims for damages remain. <u>See</u> <u>Wilson v. Nevada</u>, 666 F.2d 378, 380-81 (9th Cir. 1982).

**B. Are Defendants Protected by Qualified Immunity?**

Defendants argue they are protected from individual liability for damages in this suit by the doctrine of qualified immunity.[4] Defendants contend that implementation of the Guard One system at the PBSP SHU was done pursuant to a court order in the <u>Coleman</u> class action. Plaintiff does not dispute that the <u>Coleman</u> order requires use of the Guard One system. (ECF No. 73 at 18.) Plaintiff contends, however, that defendants are responsible for how the Guard One system has been implemented.

When a court is presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff,

---

[4] In his opposition to defendants' motion, plaintiff states that he sues only "some" defendants for damages. (<u>See</u> ECF No. 73 at 16.) However, plaintiff's SAC states that the supervisory and appeals review defendants are sued in both their official and individual capacities. (<u>See</u> ECF No. 38, ¶¶ 8-17.) Plaintiff does not identify whether he seeks relief against the floor officer defendants in their official or individual capacities. (See <u>id.</u> ¶¶ 18-20.) The court presumes plaintiff sues these defendants in their individual capacities. <u>See</u> <u>Romano v. Bible</u>, 169 F.3d 1182, 1186 (9th Cir. 1999) ("[W]e ... presume[ ] that officials necessarily are sued in their personal capacities where those officials are named in a complaint, even if the complaint does not explicitly mention the capacity in which they are sued."); <u>Shosone-Bannock Tribes v. Fish & Game Comm'n, Idaho</u>, 42 F.3d 1278, 1284 (9th Cir. 1994) ("Where state officials are named in a complaint which seeks damages under 42 U.S.C. § 1983, it is presumed that the officials are being sued in their individual capacities."). Therefore, the court considers plaintiff's potential damages claims against each defendant.

demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2)

whether the right at issue was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001).

"For the second step in the qualified immunity analysis—whether the constitutional right was

clearly established at the time of the conduct—the critical question is whether the contours of the

right were 'sufficiently clear' that every 'reasonable official would have understood that what he

is doing violates that right.'" Mattos v. Agarano, 661 F.3d 433, 442 (9th Cir. 2011) (quoting

Ashcroft v. al—Kidd, 563 U.S. 731 (2011)). "The plaintiff bears the burden to show that the

contours of the right were clearly established." Clairmont v. Sound Mental Health, 632 F.3d

1091, 1109 (9th Cir. 2011). Defendants here argue the second point - that no reasonable officer

would believe that complying with the Coleman order and executing the Guard One welfare

checks would violate plaintiff's constitutional rights.

Plaintiffs point out that well-established Ninth Circuit law holds that sleep deprivation

may violate the Eighth Amendment. "[P]ublic conceptions of decency inherent in the Eighth

Amendment require that [inmates] be housed in an environment that, if not quiet, is at least

reasonably free of excess noise." Keenan v. Hall, 83 F.3d 1083, 1090 (9th Cir. 1996), opinion

amended on denial of reh'g, 135 F.3d 1318 (9th Cir. 1998) (quotation omitted) (alteration in

original). Officials who cause sleep deprivation are not entitled to qualified immunity. See

Jones v. Neven, 399 F. App'x 203, 205 (9th Cir. 2010) (finding "excessive noise" in prisons

clearly illegal and reversing summary judgment based on qualified immunity); Chappell v.

Mandeville, 706 F.3d 1052, 1070 (9th Cir. 2013) (finding "clearly established law that conditions

having the mutually reinforcing effect of depriving a prisoner of a single basic need, such as

sleep, may violate the Eighth Amendment") (Berzon, J., dissenting in part); Williams v.

Anderson, No. 1:10-CV-01250-SAB, 2015 WL 1044629, at *10 (E.D. Cal. Mar. 10, 2015)

(denying qualified immunity because "it would have been clear to a reasonable officer that

subjecting Plaintiff to excessive noise causing sleep deprivation for several months would pose a

substantial risk of serious harm"). In fact, the prior magistrate judge in a case recently transferred

to this court denied a warden qualified immunity for a challenge to the use of Guard One. In

denying a motion to dismiss, Judge Oberto held that "[i]t has been clearly established in the Ninth

Circuit, since the 1990s, that inmates are entitled to conditions of confinement which do not result in chronic, long term sleep deprivation." Matthews v. Holland, No. 1:14-CV-01959-SKO (PC), 2017 WL 1093847, at *8 (E.D. Cal. Mar. 23, 2017).

Neither party distinguishes the defendants in this action. The court finds that important for considering the application of qualified immunity here. The court divides the defendants into three groups: (1) high-level supervisory defendants who were involved in adoption of the policy to implement Guard One, (2) appeals' review defendants, and (3) floor officer defendants who were involved in the day-to-day use of the Guard One system.

### 1. High-Level Supervisory Defendants

The court finds five defendants fit into this category: defendants Jeffrey Beard and Scott Kernan, the prior and current Secretaries of the California Department of Corrections and Rehabilitation ("CDCR"), and defendants Michael Stainer, Kelly Harrington, and Kathleen Allison, prior and current Directors of the Division of Adult Institutions of the CDCR. With respect to Beard and Kernan, plaintiff alleges only that they were "responsible for establishing, monitoring, and enforcing overall operations, policies, and practices of the California state prison system, including Pelican Bay. [They were] responsible for ensuring the provision of constitutional conditions of confinement for all inmates. At all times hereto, [they have] acted under color of state law." (ECF No. 38 ¶¶ 8, 9.)

At most, plaintiff's allegations show that defendants Beard and Kernan knew, or should have known, about the use of the Guard One system in the PBSP SHU. However, Guard One was instituted pursuant to court order issued in the Coleman case. Qualified immunity should protect a public official from individual liability where his actions were made in response to a court order. In a similar situation, the Ninth Circuit held that an officer who arrested an individual based on a city ordinance did so reasonably. Grossman v. City of Portland, 33 F.3d 1200, 1209 (9th Cir. 1994). Unless the ordinance required conduct patently violative of fundamental constitutional principles, then the officer was reasonable in relying on it and his actions were protected by qualified immunity. Id. at 1209-10; see also Haugen v. Fields, No. CV-05-3109-RHW, 2007 WL 765264, at *2 (E.D. Wash. Mar. 9, 2007) (officer entitled to qualified

16

immunity where her actions were the execution of a court order) (citing <u>Grossman</u>, 33 F.3d at 1209).

To the extent defendants Beard and Kernan were involved in authorizing the institution of Guard One, they did so in response to the court order in <u>Coleman</u>, which was, certainly, not patently unconstitutional.  Because plaintiff makes no other allegations of personal knowledge by Beard and Kernan in the actual implementation of Guard One at the PBSP SHU, they should be entitled to qualified immunity from plaintiff's suit for damages.

Plaintiff's makes similar, generalized allegations that defendants Stainer, Harrington, and Allison had supervisory authority over PBSP.  (ECF No. 38, ¶¶ 10-12.)   In addition, he alleges the following regarding Stainer:

> On May 9, 2014, the California Department of Corrections and Rehabilitation issued a memorandum titled "Security/Welfare Check Procedure Utilizing the Guard One System to Supersede Administrative Segregation Unit Welfare Check and Security/Custody Rounds in Specialized Housing Procedures."  This memorandum was signed by Defendant Michael Stainer.
>
> The May 9 memorandum required that an officer conduct "Security/Welfare Checks" of each cell housing an inmate in Administrative Segregation Units, Psychiatric Services Units, Security Housing Units, or Condemned Housing Units. During these checks, an officer is required to check that the inmate is alive and "free from obvious injury."

(<u>Id.</u> ¶¶ 25, 26.)

Plaintiff also alleges defendant Harrington authored a memorandum regarding the implementation of Guard One:

> On July 15, 2015, Defendant Kelly Harrington issued a memorandum titled "Implementation of the Security/Welfare Check Procedure Utilizing the Guard One System (Completion of Phase 3)," which stated that a new security/welfare check procedure would begin on August 3, 2015.

(<u>Id.</u> ¶ 27.)  Plaintiff makes no specific allegations about defendant Allison.

Again, according to the allegations of plaintiff's complaint, these defendants were involved in only the initial directives to implement the Guard One system at PBSP.  Plaintiff makes no allegations that defendants Stainer, Harrington, and Allison were involved in any

////

17

subsequent decision-making about the use of the system.  Like defendants Beard and Kernan, these defendants issued these directives pursuant to the court order in <u>Coleman</u>.

Therefore, the court finds they too should be protected from plaintiff's suit for damages by the doctrine of qualified immunity.

### 2.  Appeals Review Defendants and Floor Officer Defendants

The qualified immunity analysis set out above does not apply to the appeals review defendants or to the floor officer defendants.  Plaintiff alleges each of those defendants were aware of the sleep deprivation caused by the use of the Guard One system in the SHU and failed to take action to remedy the problem.  The court in <u>Coleman</u> ordered the Guard One system be implemented at PBSP.  Just how the system was used on a day-to-day basis is the subject of plaintiff's complaint.  Plaintiff contends the system was used in a way that caused excessive noise and resulted in sleep deprivation.

As noted above, the law is clearly established that excessive noise causing sleep deprivation may violate the Eighth Amendment.  <u>See</u> <u>Keenan</u>, 83 F.3d at 1090; <u>Chappell</u>, 706 F.3d at 1070.  It would have been clear to a reasonable officer that subjecting plaintiff to excessive noise causing sleep deprivation over an extended period of time would pose a substantial risk of serious harm.  It would not have been objectively reasonable for the appeals review defendants, who had supervisory authority over the floor officers, or for the floor officer defendants to think that the <u>Coleman</u> order authorized that excessive noise.  They are not entitled to qualified immunity.  <u>See</u> <u>Jones</u>, 399 F. App'x at 205 (finding "excessive noise" in prisons clearly illegal and reversing summary judgment based on qualified immunity); <u>Williams</u>, 2015 WL 1044629, at *10.

### C.  Has Plaintiff Failed to State a Claim Against the Appeals Review Defendants?

Defendants argue that the allegations against defendants Marulli, Abernathy, Cuske, and Parry, whose only involvement in the case was reviewing plaintiff's appeals, are inadequate to state claims against those defendants.[5]  It is true that simple involvement in the review of

---

[5] While the court categorizes defendant Ducart, the PBSP warden, as an "appeals review defendant," defendants do not allege the allegations against Ducart are insufficient.

grievances and appeals is not enough to state a claim under § 1983.  See George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007); Hernandez v. Cate, 918 F. Supp. 2d 987, 1018 (C.D. Cal. 2013).

The review assessment of a correctional official may constitute deliberate indifference only if the official was aware that the underlying challenged decision caused plaintiff "further significant injury or the unnecessary and wanton infliction of pain," and the official purposefully failed to pursue an appropriate remedy.  Farmer v. Brennan, 511 U.S. 825, 842 (1994); see also Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006) (prison officials, particularly those in administrative positions, may be "liable for deliberate indifference when they knowingly fail to respond to an inmate's requests for help").

In this case, plaintiff alleged that these defendants knew about his sleep problems from reviewing his grievances and had supervisory authority over the officers conducting the Guard One checks.  However, they failed to address the problems or appropriately train the officers. (SAC (ECF No. 38) ¶¶ 48-52.)  These allegations show that the appeals review defendants were aware of the continuing problem, knew it was causing plaintiff severe sleep deprivation, had the authority to take action to remedy the problem, and failed to do so.  Plaintiff has sufficiently alleged Eighth Amendment claims against defendants Marulli, Abernathy, Cuske, and Parry.

### D.  Has Plaintiff Failed to State an Eighth Amendment Claim against the Floor Officers?

Defendants argue that plaintiff's allegations against defendants Nelson, Garcia, Shaver, and Escamilla fail to show they were aware their conduct was causing harm.  In his complaint, plaintiff states:

> While Plaintiff was housed in Pelican Bay SHU, Officers Nelson, Garcia, Escamilla, and Shaver made extra noise by conducting the Guard One checks haphazardly. They ran loudly up and down the metal stairs and hit the Guard One buttons with more force than necessary. They also regularly rushed through the pods too quickly to hit the Guard One buttons accurately, causing them to attempt to hit the Guard One button on each cell multiple times, making extra unnecessary noise.

(SAC (ECF No. 38), ¶ 35.)  Plaintiff argues that the court can infer from these assertions that

these officers knew their conduct was causing prisoners to lose sleep. He states that if you find his allegations inadequate, he be permitted to amend his complaint to plead that these defendants obviously heard the noise they were making and must have known they were causing inmates to waken. He also seeks to add allegations about conversations he had with floor officers regarding the noise.

While these allegations are certainly minimal, the court infers from the fact plaintiff alleges these defendants "loudly" ran up and down the stairs and hit the Guard One buttons with more force than necessary, which is a metal on metal sound, that they would have known their conduct during the night was waking prisoners. "To prove knowledge of the risk, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge." Cotta v. Cty. of Kings, No. 1:13-CV-00359-LJO, 2013 WL 3213075, at *8 (E.D. Cal. June 24, 2013) (citing Farmer, 511 U.S. at 842 and Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir.1995)).

Further, while defendants argue that plaintiff alleges only carelessness, plaintiff's allegations indicate intentional, not simply careless, conduct. Running through the pods, allowing the pod doors to slam shut, and striking the metal buttons with the metal rods more forcefully and frequently than necessary can be construed as intentional acts. Because the court must consider the complaint in the light most favorable to plaintiff, the court finds plaintiff's allegations against the floor officer defendants are minimally sufficient to state an Eighth Amendment claim for relief.

### E. Conclusion

The court finds plaintiff's claims for injunctive and declaratory relief are mooted by plaintiff's transfer from the SHU to the general population at PBSP. Those claims should, therefore, be dismissed. Mootness does not affect plaintiff's damages claims against defendants in their individual capacities. See Wilson v. Nevada, 666 F.2d 378, 380-81 (9th Cir. 1982). However, defendants Beard, Kernan, Stainer, Harrington, and Allison are protected from claims for damages by the doctrine of qualified immunity. They should be dismissed from this action.

////

This case should proceed on plaintiff's claims for damages against defendants Ducart, Marulli, Abernathy, Cuske, Parry, Nelson, Garcia, Shaver, and Escamilla.

For the foregoing reasons, IT IS HEREBY RECOMMENDED that defendants' motion to dismiss (ECF No. 68) be granted in part and denied in part as follows:

1. Plaintiff's claims for injunctive and declaratory relief be dismissed as moot;

2. Plaintiff's claims against defendants Beard, Kernan, Stainer, Harrington, and Allison be dismissed because they are protected by qualified immunity; and

3. This case proceed on plaintiff's claims for damages against defendants Ducart, Marulli, Abernathy, Cuske, Parry, Nelson, Garcia, Shaver, and Escamilla.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, either party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 1, 2018

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-civil rights/rico1402.mtd