IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE ANDRADE RICO, | No. 2:17-cv-1402-KJM-DB-P |
| Plaintiff, | ORDER |
| v. | |
| JEFFREY BEARD, et al., | |
| Defendants. | |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action under 42 U.S.C. § 1983. The matter was referred to a United States Magistrate Judge as provided by Eastern District of California local rules, and the matter is now back before this court as explained below.

Plaintiff initiated this action by filing a complaint in the Northern District of California on August 2, 2016, ECF No. 1, in which he alleged use of the Guard One security check system in the Security Housing Unit ("SHU") at Pelican Bay State Prison ("PBSP") violated his Eighth Amendment rights. On July 6, 2017, the assigned Northern District judge ordered the case transferred to this district because the Guard One system at issue implemented this court's order in *Coleman v. Brown*, No. 2:90-cv-520-KJM-DB (E.D. Cal.). *See* ECF No. 51.

On February 2, 2018, the undersigned issued an order relating this case and two others to *Coleman*. *See* ECF No. 60.

As a result, defendants' motion to dismiss is before the court. Defendants argue they are entitled to qualified immunity, in part because they were following the *Coleman* court order to implement the Guard One security checks. *See* Mot., ECF No. 68 at 6. In addition, defendants argue granting injunctive relief would violate principles of judicial comity, and plaintiff has failed to state a cognizable claim for an Eighth Amendment violation. *Id.* at 6–7. In their supplemental briefing, defendants also argue that, because plaintiff is no longer incarcerated in the SHU at PBSP, his claims for injunctive and declaratory relief are moot. ECF No. 77 at 1.

On August 2, 2018, the magistrate judge filed findings and recommendations, recommending the court grant defendants' motion, dismissing (1) the injunctive and declaratory relief claims as moot, and (2) the claims for damages against the "high-level supervisory defendants" on the basis of qualified immunity. Findings & Recommendations ("Findings"), ECF No. 86 at 7–14. The magistrate judge recommended denying the motion to dismiss with respect to the remaining claims for damages against the "appeals review defendants" and the "floor officer defendants," finding they are not entitled to qualified immunity. *Id.* at 18.

Plaintiff and defendants filed objections to the Findings, and responses to the other parties' objections. ECF Nos. 87–89 & 91. In light of the court's standing order encouraging argument by new attorneys, plaintiff filed a request for oral argument on his objections, to be argued by a new attorney. ECF No. 90; *see also* Standing Order ("If a written request for oral argument is filed before a hearing, stating an attorney of four or fewer years out of law school will argue the oral argument, then the court will hold the hearing."). The court heard oral argument on the parties' objections on October 19, 2018. ECF No. 94.

On January 16, 2019, defendants filed a letter regarding a new Supreme Court case on qualified immunity, and plaintiff responded. ECF Nos. 96, 97 (citing *City of Escondido, California, et al. v. Emmons*, 139 S. Ct. 500, 2019 WL 113027, at *3 (Jan. 7, 2019) (per curiam)). Defendants filed a second letter soon after, regarding a new Ninth Circuit case on qualified

immunity, and plaintiff responded. ECF Nos. 98, 100 (citing *Hines v. Youseff*, 914 F.3d 1218 (9th Cir. Feb. 1, 2019)).

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C) and Local Rule 304, this court has conducted a *de novo* review of this case. Having reviewed the file, considered the parties' briefing and arguments, and good cause appearing, the court finds the findings and recommendations with respect to qualified immunity to be supported by the record and by the proper analysis, with the clarification below. The court also agrees with the magistrate judge that plaintiff's claims for injunctive and declaratory relief are moot, without adopting the magistrate judge's reasoning regarding the distinction between the Administrative Segregation Unit ("ASU") at PBSP and the SHU at PBSP. Instead, as explained below, the court finds plaintiff has not met his burden of showing a reasonable expectation that he will return to ASU for non-punitive reasons.

I.  QUALIFIED IMMUNITY

    A.  High-Level Supervisory Defendants

At oral argument, plaintiff's counsel clarified that plaintiff's claims against the "high-level supervisory defendants" do not arise from their implementation of the Guard One system, but from the Guard One system itself, which plaintiff argues is inherently unconstitutional even if implemented without human error. The court therefore accepts the magistrate judge's recommendation that the "high-level supervisory defendants," defendants Beard, Kernan, Stainer, Harrington and Allison, are entitled to qualified immunity because they were carrying out a facially valid court order in instituting the Guard One system. *See* Findings at 16–18; *see also Hines*, 914 F.3d at 1230–31 (state officials entitled to qualified immunity for exposing inmates to Valley Fever in part because officials reported to federal receiver charged with managing state prison system's response to Valley Fever); *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979) (recognizing that government officers would be immune from civil rights liability for actions authorized by court order); *Kulas v. Valdez*, 159 F.3d 453, 456 (9th Cir. 1998) (prison doctor entitled to qualified immunity for forcibly administering drugs to inmate pursuant to facially valid court order).

B. Other Defendants

By contrast, plaintiff's claims against the "appeals review defendants," Ducart, Abernathy, Marulli, Cuske and Parry, and the "floor officer defendants," Nelson, Garcia, Escamilla and Shaver, arise out of those defendants' allegedly flawed implementation of the court order. *See* Findings at 18; Pl.'s Opp'n to Defs.' Mot. to Dismiss at 18 ("[T]he *Coleman* Order does not shield the Defendants from liability for their actions beyond the scope of the Order . . . . [Plaintiff] alleges that the checks were even louder due to the Defendants' actions beyond the scope of the Order, such as hitting the buttons with extra force and multiple times."). Because the appeals review defendants' and floor officer defendants' alleged actions go beyond the bounds of the court's order, the court adopts the magistrate judge's recommendation that these defendants are not entitled to qualified immunity, as supplemented below.

1. Qualified Immunity: Clearly Established Law

The court's conclusion turns on application of the second prong of the two-pronged test used in assessing whether qualified immunity applies. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Under the second prong, "the court [] decide[s] whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct"; if it was not, a defendant is entitled to qualified immunity. *Id.* (citing *Saucier*, 533 U.S. at 201).

The Supreme Court has assumed without deciding that the law as determined by a Circuit court may constitute clearly established law. *See, e.g.*, *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) ("[E]ven if a controlling circuit precedent could constitute clearly established law in these circumstances, it does not do so here.") (quoting *City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1165, 1176 (2015)); *Elder v. Holloway*, 510 U.S. 510, 516 (1994); *see also Carrillo v. County of Los Angeles*, 798 F.3d 1210, 1221 & n.13 (9th Cir. 2015) (noting that in *Hope v. Pelzer*, 536 U.S. 730, 741–45 (2002), the Court looked to "binding circuit precedent" to determine clearly established law and has not yet "overruled *Hope* or called its exclusive reliance on circuit precedent into question").

/////

4

The Ninth Circuit makes clear it "first look[s] to binding precedent to determine whether a law was clearly established." *Ioane v. Hodges*, 903 F.3d 929, 937 (9th Cir. 2018) (citing *Chappell v. Mandeville*, 706 F.3d 1052, 1056 (9th Cir. 2013)); *see Carrillo*, 798 F.3d at 1221 ("clearly established law" includes "controlling authority in [the defendants'] jurisdiction" (alteration in original) (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). If no binding precedent "is on point, [the Ninth Circuit] may consider other decisional law." *Chappell*, 706 F.3d at 1056. Ultimately, "the prior precedent must be 'controlling'—from the Ninth Circuit or Supreme Court—or otherwise be embraced by a 'consensus' of courts outside the relevant jurisdiction." *Sharp v. Cty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) (citing *Wilson*, 526 U.S. at 617). That said, the Ninth Circuit has approved of the use of unpublished and district court decisions to inform qualified immunity analysis in conjunction with controlling authority. *Sorrels v. McKee*, 290 F.3d 965, 971 (9th Cir. 2002) ("We have held that unpublished decisions of district courts may inform our qualified immunity analysis.").

          i.        Level of Specificity

Clearly established law must be defined with a "high 'degree of specificity,'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015) (per curiam)), and this standard is "demanding," *id.* at 589. The "legal principle [at issue] must have a sufficiently clear foundation in then-existing precedent." *Id.* It "must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority," rather than merely "suggested by then-existing precedent." *Id.* at 589–90 (citations and internal quotation marks omitted).

While "a case directly on point" is not required "for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate," *Kisela*, 138 S. Ct. at 1152 (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)), and must "'squarely govern[]' the specific facts at issue." *Id.* at 1153 (citing *Mullenix*, 136 S. Ct. at 309); *see also Pike v. Hester*, 891 F.3d 1131, 1141 (9th Cir. 2018) ("An exact factual match is not required . . . ."). "The rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Wesby*, 138 S. Ct. at 590

(quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).  Thus, "[t]he dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) (quoting *Mullenix*, 136 S. Ct. at 308) (emphasis and alteration in original).

"This requirement—that an official loses qualified immunity only for violating clearly established law—protects officials accused of violating 'extremely abstract rights.'" *Ziglar*, 137 S. Ct. at 1866 (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).  In one oft-quoted summation of these principles, the Court has said qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law." *Wesby*, 138 S. Ct. at 589 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

ii. Notice/Fair Warning

Specificity is required to provide officials with notice of what conduct runs afoul of the law.  "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela*, 138 S. Ct. at 1152 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) ("'[T]he salient question . . . is whether the state of the law' at the time of an incident provided 'fair warning' to the defendants 'that their alleged [conduct] was unconstitutional.'") (quoting *Hope*, 536 U.S. at 741) (alterations in original).

Although "'general statements of the law are not inherently incapable of giving fair and clear warning to officers,' . . . . constitutional guidelines [that] seem inapplicable or too remote" will not suffice.  *Kisela*, 138 S. Ct. at 1153 (quoting *White*, 137 S. Ct. at 552).  Put another way, "[a]n officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'"  *Id.* (quoting *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014)).  Accordingly, "a court must ask whether it would have been clear to a reasonable officer that the alleged conduct 'was unlawful in the situation he confronted.'"  *Ziglar*, 137 S. Ct. at 1867 (quoting *Saucier*, 533 U.S. at 202).

/////

6

2. <u>Discussion</u>

Applying these principles here, by 2016 it was clearly established that forcing an inmate to live in an environment with excessive noise is a violation of the Eighth Amendment. *See* Findings at 15–16. The magistrate judge comes to the same conclusion, but cites *Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996), *opinion amended on denial of reh'g*, 135 F.3d 1318 (9th Cir. 1998) and *Chappell,* 706 F.3d at 1070, for the proposition that "the law is clearly established that excessive noise causing sleep deprivation may violate the Eighth Amendment." Findings at 18. Though these two cases do not directly address sleep deprivation caused by noise. *See Keenan*, 83 F.3d at 1090–91 (addressing sleep deprivation caused by excess light and separate claim for excessive noise); *Chappell*, 706 F.3d at 1057–58 ("Chappell's claim is based on seven days of contraband watch, and he did not claim that he was sleep deprived."). Nonetheless, the court agrees that it was clearly established that both excess noise and excess sleep deprivation could violate the Eighth Amendment.

In *Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996), *opinion amended on denial of reh'g*, 135 F.3d 1318 (9th Cir. 1998), the panel majority opined that "[p]ublic conceptions of decency inherent in the Eighth Amendment require that [inmates] be housed in an environment that, if not quiet, is at least reasonably free of excess noise." *Keenan*, 83 F.3d at 1090 (quoting *Toussaint v. McCarthy,* 597 F. Supp. 1388, 1397, 1410 (N.D. Cal. 1984)). And in *Jones v. Neven*, an unpublished decision, the Ninth Circuit vacated a finding that qualified immunity applied because "the Eighth Amendment rights [plaintiff] claims defendants violated," including the right to be free from "excess noise," were "clearly established." 399 F. App'x 203, 205 (9th Cir. 2010).[1]

It also was clearly established that causing an inmate excessive sleep deprivation is an Eighth Amendment violation. *Keenan v. Hall*, 83 F.3d at 1090 (constant illumination

---

[1] On appeal after remand in *Jones*, the Circuit ultimately found defendants were entitled to qualified immunity on plaintiff's conditions of confinement claims based on (1) deprivation of a mattress and (2) "constant lighting in his cell for a period of ninety-six hours." *Jones v. Neven*, 678 F. App'x 490, 493 (9th Cir. 2017), *cert. denied*, 137 S. Ct. 2279 (2017). The court did not address the question of qualified immunity with respect to plaintiff's claim of excessive noise. *See id.*

7

interfering with sleep, with no legitimate penological purpose, can be an Eighth Amendment violation); *Chappell,* 706 F.3d at 1070 (dissent observing, although majority did not reach question, "it was clearly established law that conditions having the mutually reinforcing effect of depriving a prisoner of a single basic need, such as sleep, may violate the Eighth Amendment."). District court decisions provide further support for this proposition. *Harris v. Sexton*, No. 1:18-cv-00080-DAD-SAB, 2018 WL 6338730, at *1 (E.D. Cal. Dec. 5, 2018) ("[T]he Ninth Circuit has concluded that conditions of confinement involving excessive noise that result in sleep deprivation for inmates may violate the Eighth Amendment.") (citing *Jones*, 399 F. App'x at 205; *Keenan*, 83 F.3d at 1090); *Matthews v. Holland*, No. 114CV01959SKOPC, 2017 WL 1093847, at *8 (E.D. Cal. Mar. 23, 2017) ("It has been clearly established in the Ninth Circuit, since the 1990s, that inmates are entitled to conditions of confinement which do not result in chronic, long term sleep deprivation.") (citing *Keenan*, 83 F.3d at 1090–91) (other citations omitted); *Williams v. Anderson*, No. 1:10-CV-01250-SAB, 2015 WL 1044629, at *10 (E.D. Cal. Mar. 10, 2015) (officer not entitled to qualified immunity because, "[v]iewed in Plaintiff's favor, the Court finds that it would have been clear to a reasonable officer that subjecting Plaintiff to excessive noise causing sleep deprivation for several months would pose a substantial risk of serious harm.").

Given the clearly established law regarding excessive noise and excessive sleep deprivation, a reasonable officer would have known it was unlawful to create a racket by running "loudly up and down the metal stairs" and hitting "the Guard One buttons with more force than necessary," "multiple times, making extra unnecessary noise" once an hour during the night, thereby causing inmates severe sleep deprivation. *See* First Am. Compl., ECF No. 38, ¶¶ 35–38. For the same reasons, a reasonable officer would have known it was unconstitutional to ignore an inmate's complaint detailing such allegations. Therefore, the appeals review defendants and the floor level defendants are not entitled to qualified immunity.

/////

/////

/////

8

## II. MOOTNESS

Because plaintiff is no longer in the SHU, and therefore no longer subject to the Guard One checks, the magistrate judge found plaintiff's claims for injunctive and declaratory relief ("the claims") moot unless they fall under one of two exceptions to the mootness doctrine. Findings at 7–8. The magistrate judge found that neither of the exceptions applied, and the court adopts this finding, as explained here.

First, the voluntary cessation exception to mootness does not apply, because defendants did not unilaterally cease their illegal activity in response to the instant litigation when they released plaintiff from the SHU after his SHU term expired. *See* Findings at 12; *see also Pub. Utilities Comm'n of State of Cal. v. F.E.R.C.*, 100 F.3d 1451, 1460 (9th Cir. 1996) ("[D]efendant's voluntary cessation must have arisen *because* of the litigation.") (emphasis in original) (citing *Nome Eskimo Community v. Babbitt*, 67 F.3d 813, 816 (9th Cir. 1995)).

The second mootness exception applies if "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." Findings at 8 (quoting *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1540 (2018)). This is often referred to as the "capable of repetition yet evading review" exception. *See, e.g.*, *Pub. Utilities Comm'n of State of Cal.*, 100 F.3d at 1459. The magistrate judge concludes plaintiff has not met his burden to establish the second prong of this test is satisfied, and the court agrees. *See* Findings at 8–11.

However, the magistrate judge also construes plaintiff's complaint as "limited to his challenge to the use of Guard One in the SHU at PBSP"; therefore, she says the actions challenged are capable of repetition only if there is a reasonable expectation that plaintiff will be incarcerated in that SHU again. *Id.* at 9. Plaintiff objects, explaining the Guard One system is being implemented in both the ASU and the SHU at PBSP, and cites declarations from PBSP prisoners who complain of the same sleep deprivation caused by use of Guard One in the ASU. Pl.'s Objs. at 7–9 (citing Pl.'s Mootness Br. Ex. B–Ex. D (ECF Nos. 84-2–84-4)) (other citations omitted). The court need not reach the question of whether the conditions in the ASU and the

conditions in the SHU are sufficiently factually distinct to render plaintiff's potential future incarceration in the ASU irrelevant for mootness purposes. *See* Findings at 9.

Assuming without deciding that the ASU conditions as relevant here are equivalent to those in the SHU, the court finds plaintiff has not met his burden of showing a reasonable expectation he will be reincarcerated in either the SHU or the ASU for non-punitive reasons. *See Sanchez-Gomez*, 138 S. Ct. at 1541. Because the "capable of repetition" prong cannot be satisfied by a reasonable expectation that plaintiff will commit future misconduct, the exception cannot be satisfied here by plaintiff's mere expectation that he will be reincarcerated in the SHU or in the ASU for punitive reasons. *See* Findings at 10–11; *see also Sanchez-Gomez*, 138 S. Ct. at 1541 ("cable of repetition yet evading review" exception not satisfied by "possibility that a party will be prosecuted for violating valid criminal laws") (citation omitted).

    A.    <u>Returning to the SHU</u>

Because the SHU is used to punish inmates who have committed misconduct, plaintiff is not able to show that he is likely to return there for a non-punitive reason. In fact, as defendants point out, Rico "does not dispute that he 'holds the keys' to remaining free from the Guard One checks in the SHU because SHU placement is tied directly to Rico's behavior." Defs.' Response to Pl.'s Objs. at 9 (citing Cal. Code Regs., tit. 15 § 3341.3 ("An inmate whose conduct endangers the safety of others or the security of the institution shall be housed in a [SHU] to complete an administrative SHU term or for a determinate period of time, if found guilty for serious misconduct pursuant to section 3341.9(e).")). Moreover, defendants offer evidence to show plaintiff has only ever been placed in the SHU for punitive reasons in the past. *Id.* (citing ECF No. 83-1 at 2).

Therefore, the magistrate judge is correct that plaintiff cannot meet his burden to show he is likely to return to the SHU for non-punitive reasons.

    B.    <u>Returning to the ASU</u>

Plaintiff also does not meet his burden to show there is a reasonable possibility he will return to the ASU for non-punitive reasons. To make this showing, plaintiff relies on: (1) his unsupported representation that he "has already been released from and returned to solitary

confinement during the course of this lawsuit," Pl.'s Objs. at 13 (emphasis omitted), and (2) case law in which courts generally have observed that "administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration," *id.* at 14 (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). The court rejects both arguments.

As to the first point, plaintiff does not clarify whether he has been placed in any form of solitary confinement for non-punitive reasons. *See id.* at 13. Defendants argue, with support, that plaintiff has only ever been housed in the ASU for punitive reasons. Defs.' Response to Pl.'s Objs., ECF No. 91 at 12 ("[Plaintiff] has never been placed in ASU for any of [the governing regulations' list of] non-punitive reasons."). In fact, "the only two times he was housed in ASU were pending the adjudication of his Rules Violation Reports . . . ." *Id.* (citing Reynolds Decl., ECF No 83-1, ¶ 2). Plaintiff does not dispute or rebut defendants' representations and so has not met his burden of showing he will likely be placed in the ASU in the future for non-punitive reasons.

As to plaintiff's second point, the cases he cites do not establish that all prisoners are repeatedly held in administrative segregation for non-punitive reasons throughout their sentences. The Court in *Hewitt* at most observes quite generally that administrative segregation is "the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983), *receded from on other grounds*, *Sandin v. Conner*, 515 U.S. 472, 472 (1995). The Ninth Circuit similarly has noted only broadly that placement in the SHU was "within the range of confinement to be normally expected" by prison inmates and therefore plaintiff "had no protected liberty interest in being free from confinement in the SHU pending his disciplinary hearing." *Resnick v. Hayes,* 213 F.3d 443, 448 (9th Cir. 2000). Because *Resnick* addresses detention in special housing for punitive reasons only, it does not support an argument that plaintiff is reasonably likely to return to the ASU or SHU for non-punitive reasons. *See Sanchez-Gomez*, 138 S. Ct. at 1541. Plaintiff has identified no authority supporting his argument that he has a reasonable expectation of returning to ASU in the future.

11

For the foregoing reasons, the court finds plaintiff has not met his burden of showing a reasonable expectation of returning to the SHU or the ASU for non-punitive reasons, and therefore his claims for injunctive and declaratory relief are moot.

Accordingly, IT IS HEREBY ORDERED:

1. The findings and recommendations filed August 2, 2018, are ADOPTED to the extent they are consistent with the explanations above;
2. Plaintiff's claims for injunctive and declaratory relief are DISMISSED as moot;
3. Plaintiff's claims against defendants Beard, Kernan, Stainer, Harrington and Allison are DISMISSED based on qualified immunity;
4. The case will proceed on plaintiff's claims for damages against the appeals review defendants (Ducart, Marulli, Abernathy, Cuske and Parry) and the floor officer defendants (Nelson, Garcia, Shaver and Escamilla); and
5. The case is referred back to the magistrate judge for further proceedings in light of this order and as provided by the Local Rules.

DATED: March 4, 2019.

UNITED STATES DISTRICT JUDGE